VAN DEN BRON,
*Appellant,*

*v.*

FRED MEYER, INC.,
*Respondent.*

(A8410-06225; CA A40069)

738 P2d 1011

Richard C. Baldwin, Portland, argued the cause for

appellant. With him on the brief was Baldwin & Brischetto, Portland.

Deborah L. Sather, Portland, argued the cause for respondent. With her on the brief were Frank A. Moscato and Moscato and Byerly, Portland.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

In December, 1982, plaintiff was injured when she slipped and fell in a puddle of water in the produce section of defendant's store. She brought this action to recover damages for her injuries. At the close of plaintiff's case in chief, the trial court granted defendant a directed verdict. ORCP 60. A judgment was entered dismissing the action, and plaintiff appeals. We reverse.

■■ An invitee who is injured by slipping on a foreign substance on the floor of a business property, in order to recover from the occupant having control of the property, must show: (1) that the substance was placed there by the occupant, *or* (2) that the occupant knew that the substance was there and failed to use reasonable diligence to remove it *or* (3) that the foreign substance had been there for so long that the occupant should, in the exercise of reasonable diligence, have discovered and removed it. *Pribble v. Safeway Stores,* 249 Or 184, 187, 437 P2d 745 (1968).[1] A directed verdict should be entered only in exceptional cases when a reasonable person could draw but one inference from the facts and that inference supports the conclusion that the defendant was not negligent. *See James v. Carnation Co.,* 278 Or 65, 69, 562 P2d 1192 (1977). We view the evidence in the light most favorable to plaintiff and give her the benefit of every reasonable inference that may be drawn from the evidence. *Schlosser v. Clackamas Water District,* 60 Or App 617, 619, 655 P2d 194 (1982).

We agree with the trial court that plaintiff's evidence was insufficient as to the second and third theories of recovery. As to the second theory, there is no evidence that defendant knew that the puddle was on the floor. *See Diller v. Safeway Stores, Inc.,* 274 Or 735, 738, 548 P2d 1304 (1976). We also agree that plaintiff's evidence was insufficient as to the third theory. The only evidence as to how long the water had been there was the produce manager's testimony that he had

---

[1] We have examined *Fazzolari v. Portland School Dist. No. 1J,* 303 Or 1, 734 P2d 1326 (1987), and particularly footnote 17 and the text accompanying it, and conclude that an injured plaintiff who invokes the obligations of a possessor of land to its invitees has invoked a "special relationship" apart from the generalized standards that the common law of negligence imposes on persons at large. Therefore, existing cases from this court and the Supreme Court discussing the liability of possessors of land have survived *Fazzolari.*

mopped the floor approximately two hours before plaintiff's fall and that it was his habit to mop every 20 minutes or so[2] and the following testimony from plaintiff:

"Q: But you have no knowledge as to how long that water was there, do you?

"A: It looks pretty fresh.

"Q: It was real clear and clean?

"A: Yes, after he showed me."

Given that evidence, no reasonable inference can be drawn as to how long the water was on the floor. *See Diller v. Safeway Stores, Inc., supra,* 274 Or at 739; *Dubry v. Safeway Stores,* 70 Or App 183, 189, 689 P2d 319 (1984), *rev den* 298 Or 470 (1985).

There is, however, evidence from which the jury could infer that defendant's employes placed the water on the floor. Plaintiff testified that there were hoses in the produce area that defendant's employes used to keep the produce moist. One of the hoses was lying on the floor four feet from where plaintiff slipped. Plaintiff also testified that defendant's employes brought wet produce from a storage area on carts through the aisles and that that storage area was wet.[3] The produce manager testified:

"Q: It was common for water to spill all over the floor, all over the produce area, wasn't it?

"A: You can see water, you know, throughout the department.

"Q: It was common, wasn't it?

"A: *More common along the wet rack area.*"

Plaintiff also testified that the weather was dry and that she

---

[2] The produce manager testified:

"Q: * * *[I]sn't it a fact that you hadn't mopped the floor before you picked her up, with the exception of mopping the floor—

"A: In the morning?

"Q: Immediately before the store opened.

"A: Sure. I mopped the floor. I can't say or recall mopping the floor, but I am sure I did mop the floor, because we mop the floor every 20 minutes, constantly."

[3] Plaintiff was familiar with the store, because she had shopped there for fresh produce for her restaurant every other day for the six months before her injury.

slipped in front of a "dry" produce table.

■     From that evidence, a jury could infer that the water either fell from a produce cart or accumulated when the hose was being used and that it was not tracked in by a customer or spilled by a customer shaking water off of a piece of wet produce. Thus, the jury could have found that it was more probable than not that the water was spilled by defendant's employes. It was error to grant defendant a directed verdict. *See Pavlik v. Albertson's Inc.,* 253 Or 370, 374-75, 454 P2d 852 (1969).

Reversed and remanded.