# WATSON,
*Respondent,*

*v.*

# PUGET SOUND TUG & BARGE COMPANY et al,
*Appellants.*

## (A8509-05722; CA A44520)

771 P2d 307

John R. Faust, Jr., Portland, argued the cause for appellants. With him on the briefs was Schwabe, Williamson & Wyatt, Portland.

Raymond J. Conboy, Portland, argued the cause for respondent. With him on the brief were Frank Pozzi and Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

Before Richardson, Presiding Judge, and Newman and Riggs, Judges.

NEWMAN, J.

## NEWMAN, J.

Plaintiff[1] sued to recover for an occupational disease that he alleged that he had acquired during his work for defendants as a deckhand on tugboats and barges. The court submitted two bases of liability to the jury: negligence under the Jones Act, 46 USC § 688, and unseaworthiness under general maritime law. Defendants asserted the affirmative defense of contributory negligence. The jury found that defendants' vessels were "unseaworthy in a manner that was a substantial factor in causing plaintiff's injuries"; that defendants' negligence caused plaintiff's injuries; that plaintiff did not know and could not, with reasonable diligence, have known before September 16, 1982, "of the existence of the physical conditions which are the subject of this lawsuit and that such injuries were related to his employment"; and that plaintiff was not negligent "in a manner which contributed to his own injuries." Defendants appeal plaintiff's judgment and assign as errors that the court denied their motions for a directed verdict and that it instructed the jury on assumption of the risk. We affirm.

We review the evidence to determine whether it was sufficient to support the jury's verdict. *Menke v. Bruce,* 88 Or App 107, 109, 744 P2d 291 (1987). Except for a brief period, plaintiff worked as a barge deckhand on the Columbia River from 1950 until 1984. The work was physically hard; it included pulling heavy lines, lifting heavy objects, handling heavy straps, working with cables and ropes and climbing. The work became more difficult during the course of his employment, because defendants reduced the number of deckhands assigned to each crew and towed larger barges. On the largest barges, plaintiff had to work with "superstraps," which were hard core metal wires one and one-half inches in diameter, 30 feet in length, weighing approximately 190 pounds. Defendants regarded him as one of their best deckhands, "a real mule."

Plaintiff often suffered injuries at work, but he recovered from them. In 1959, he hurt his back and went to a

---

[1] Plaintiff Richard H. Watson died after we heard this case on appeal; Lyle A. Watson, his personal representative, was substituted as plaintiff. We refer to Richard Watson as "plaintiff."

chiropractor for treatment. He strained his back in 1960 and injured it again in 1976. He injured his foot in 1964 and his wrist in 1977. He injured an elbow and suffered a sprained finger in 1984. In July, 1984, he told the doctor that he had had trouble walking on a barge, and on December 5, 1984, he reported that he was unable to walk on a barge. That month, Dr. Skirving, plaintiff's physician, took X rays of his back. They showed degeneration of his lumbar spine and hips. Skirving informed defendants that plaintiff had degenerative arthritic changes in his back and hips. Defendants then retired plaintiff.

Skirving testified that plaintiff's problems were a result of continued trauma of working. Dr. Thompson, an orthopedic physician who treated plaintiff after he had retired, testified that "repeated acts of having to handle lines and gear and doing heavy manual labor" caused "the injuries and what happened to him."

At the close of plaintiff's case, and at the close of all the evidence, defendants moved for a directed verdict on three grounds: (1) plaintiff had failed to introduce sufficient evidence to prove that defendants were liable due to negligence or unseaworthiness, because he did not identify a standard of care or of seaworthiness that defendants had violated; (2) plaintiff did not have an "occupational disease" for purposes of the Jones Act; and (3) the Statute of Limitations barred plaintiff's claim.

 To prove a claim of negligence under the Jones Act, a plaintiff must show that the defendants failed to exercise reasonable or ordinary care under the circumstances.[2] *Carlson v. Wheeler-Hallock Co.*, 171 Or 349, 355, 137 P2d 1001 (1943). Although plaintiff's evidence showed that his work was physically hard and that defendants could have made it easier, defendants argue that he failed to produce evidence of a standard of care that they had breached. They assert that the jury "cannot unaided determine what equipment and manning are required to meet the legal standards of due care * * * on the particular operations of river tugs and barges." His evidence,

---

[2] We do not discuss defendants' arguments relating to unseaworthiness, because the finding for plaintiff on the negligence claim is sufficient to support the award. *See Veberes v. Knappton*, 92 Or App 378, 759 P2d 279 (1988); *Wells v. Home Purchasing Corp.*, 84 Or App 103, 106, 733 P2d 898 (1987).

however, was sufficient. Plaintiff's witnesses testified that defendants did not employ enough crew members to complete the assigned tasks without injury to the crew and that the equipment that defendants provided to plaintiff, or authorized others to provide to him, was inadequate to avoid injury. There was also evidence from which the jury could find that defendants knew or should have known of equipment and manning deficiencies on vessels that they did not own, but on which they required plaintiff to work. Accordingly, the jury could find that defendants failed to exercise ordinary and reasonable care under the circumstances. Defendants' showing that the number of seamen assigned to each crew complied with the collective bargaining agreement or "community standards" did not require the court to direct a verdict for them.

The jury also could find from the evidence that defendants' negligence caused the work to be too heavy and could conclude from the medical evidence and plaintiff's testimony that the physical difficulty of the work caused his disease.

■ ■ The three-year limitation period for a negligence claim under the Jones Act begins to run when the seaman knows, or should know, of the disease and that the work caused it. 45 USC § 56; 46 USC § 688. *Urie v. Thompson,* 337 US 163, 69 S Ct 1018, 93 L Ed 1282 (1949); *see Hutchinson v. Semler et al,* 227 Or 437, 446, 361 P2d 803, 362 P2d 704 (1961). Plaintiff filed his complaint on September 18, 1985. Defendants argue that the claim was barred, because his ailments began in 1959, and he knew, or should have known, before September, 1982, of a causal connection between his work and his condition. Although plaintiff had sustained injuries to various parts of his body, the jury could find from the evidence that he neither knew, nor should have known, before September, 1982, that he had a degenerative condition. Moreover, plaintiff testified that, when he started having serious physical problems in 1983, he did not know, and no doctor then told him, that they were caused by his work. The jury was entitled to believe him.

■ Defendants assign as error that the court instructed the jury:

"You are instructed that under the law applicable to this case, the plaintiff cannot be charged with assuming the risk

and dangers caused by the unseaworthiness, if any, of the vessel, or negligence of the defendant ship owner."

The court should not have instructed the jury on assumption of risk. It was not an issue in the case. *See Plourd v. Southern Pac. Transp. Co.,* 266 Or 666, 671, 513 P2d 1140 (1973). Defendants argue that the erroneous instruction was prejudicial in light of plaintiff's counsel's statement in his closing argument to the jury that it should take care to distinguish assumption of risk from contributory negligence. Defendants assert that, because of the erroneous instruction, this statement could "easily be understood as implying that defendants' arguments on contributory negligence will be contrary to the court's instructions." We have examined the record. Plaintiff's counsel's statement to the jury did not make prejudicial the court's error in its instructions. *See* ORCP 12B.

Affirmed.